**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIMMY ALEXANDER PRADO CARRILLO,<br><br>              Petitioner,<br><br>        v.<br><br>MARKWAYNE MULLIN, ET AL.,<br><br>              Respondents. | Case No. 5:26-cv-03955-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On July 15, 2026, Petitioner Jimmy Alexander Prado Carrillo (A# 246-079-835) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus (the "Petition"), challenging his detention in immigration custody.  (Dkt. 1 at 2-4.)  On July 22, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Rodney S. Scott, Jaime Rios, Acting Field Office Director for Los Angeles, Immigration and Customs Enforcement ("ICE"), Eddy Wang, Special Agent in Charge for Los Angeles, Homeland Security Investigations ("HSI"), ICE, and Warden of the

Adelanto ICE Processing Center (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 8.) The Answer states that "Respondents are not presenting an opposition argument at this time." (Id. at 2.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 6.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 29.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 8.) Indeed, "Respondents are not presenting an opposition argument at this time." (Id. at 2.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner first entered the United States on or about December 13, 2022. (Dkt. 1 at 10.) After a brief detention at the border, Petitioner was released and ordered to appear before an ICE office in order to be placed on supervision. (Id.) Petitioner appeared before the local ICE officer and was placed under the Intensive Supervision Appearance Program ("ISAP"). (Id.) Petitioner appeared for all check-in appointments without any violation. (Id.) Petitioner has no criminal history. (Id.) Petitioner complied with all immigration court requirements. (Id.)

On July 6, 2026, Petitioner was detained while attending a standard ICE check-in. (Id.) Petitioner was then transferred to the Adelanto ICE Processing

Center.  (Id.)  Petitioner thereafter issued a Notice to Appear charging Petitioner as inadmissible pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), alleging presence in the United States without admission or parole.  (Id. at 10-11.)  Notwithstanding Petitioner's release history and supervision compliance, Respondents revoked Petitioner's liberty without providing advance notice, written allegations, disclosure of evidence, neutral adjudication, an opportunity to respond, individualized findings concerning danger, individualized findings concerning flight risk, or a determination of materially changed circumstances.  (Id. at 11.)

Prior to his re-detention, Petitioner remained employed, compliant with requirements, and integrated into the community.  (Id.)  Respondents identified no intervening misconduct, absconding, danger determination, flight finding, supervision violation, or materially changed circumstance justifying revocation of liberty.  (Id.)  Petitioner had been residing in Los Angeles, California.  (Id. at 10.)

## III.
## SUMMARY OF PETITIONER'S CLAIMS

Petitioner contends that his re-detention without constitutionally adequate process violated his rights under the Fifth Amendment.  (Dkt. 1 at 14-23.)  Petitioner further contends that his detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A).  (Id. at 23-25.)  Petitioner further contends that equitable factors and conditions of confinement support immediate relief.  (Id. at 25-26.)  Petitioner seeks a declaration that his detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A).  (Id. at 26.)  Petitioner further seeks immediate release from custody on his prior conditions of release.  (Id. at 27.)  Petitioner further seeks an order enjoining Respondents from re-detaining Petitioner absent advance written notice, disclosure of asserted grounds, a showing of materially changed circumstances, individualized findings concerning danger or flight risk, and a constitutionally

adequate process before a neutral adjudicator.  (Id. at 27.)  Petitioner further seeks an order requiring that any future detention determination require Respondents to establish by clear and convincing evidence that detention rather than less restrictive alternatives is necessary.  (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53

4

F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed."  Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

# V.

# ANALYSIS

It is undisputed that Petitioner entered the United States on or about December 13, 2022, was detained at the border, and then released by immigration authorities and placed under the ISAP. (Dkt. 1 at 10.)[1] Thus, the Court concludes that once Petitioner was released from custody on supervision, Petitioner acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the length of time he has resided out of custody and built a life for himself in Los Angeles, California. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed,

---

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

6

it is undisputed that Petitioner remained employed, compliant with all requirements, and integrated into the community.  (Dkt. 1 at 11.)  Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody.  See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was re-detained by ICE on July 6, 2026, while attending a standard ICE check-in and was not provided prior notice or a pre-deprivation hearing.  (Dkt. 1 at 10.)  It is further undisputed that Petitioner has appeared for all check-in appointments without any violation, has no criminal history, and complied with all immigration court requirements.  (Id.)  Thus, the Court concludes that Petitioner's re-detention by immigration authorities on July 6, 2026, without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal

7

quotation marks omitted).  The last uncontested status here is Petitioner's release from custody under the ISAP.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[2] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety

---

[2] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor.  Under the second Matthews factor, the risk of erroneous deprivation is very high because it is undisputed that Petitioner has appeared for all check-in appointments without any violation, has no criminal history, and complied with all immigration court requirements. (Dkt. 1 at 10.)  Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").  Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  The Court finds that Petitioner has made such a showing here.  Petitioner has suffered an irreparable injury by being re-detained in violation of his due process rights, and would again if Respondents repeat such conduct.  Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty.  And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited

9

injunction against future re-detention without notice and a pre-deprivation hearing.[3]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case.  See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that the Government's Notice to Appear charges Petitioner as inadmissible pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), alleging presence in the United States without admission or parole. (Dkt. 1 at 10-11.)  Based on the Notice to Appear, Petitioner qualifies as a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).  On December 18, 2025, the court in Maldonado Bautista entered final judgment and granted declaratory relief to all members of the Bond Eligible Class.  See Bautista v. Santacruz, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  Pursuant to the final judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to

---

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California" pending a ruling on the Government's motion for a stay pending appeal. Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026). Thus, the December 18, 2025 declaratory judgment remains effective and enforceable within the Central District of California.

Accordingly, the Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). See Maldonado Bautista, 2025 WL 3678485, at *1. Indeed, the statutory basis of Petitioner's detention may become relevant to any future determination of Petitioner's suitability for release on bond, should he be detained in the future. Moreover, Petitioner is entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). See id. However, Petitioner is also entitled to immediate release from custody based on the violation of his procedural due process rights, as explained above.

## VI.
## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. The Court declares that Petitioner is currently detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Respondents shall immediately release Petitioner Jimmy Alexander Prado Carrillo (A# 246-079-835) ("Petitioner") from custody on his prior conditions of release (only those conditions in place prior to Petitioner's July 6, 2026 re-detention). Respondents

11

shall also immediately return any confiscated property and documents to Petitioner upon release.  Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED:   July 27, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

12